UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:21-cv-00019-RJC

| | |
|---|---|
| NICHOLE BELANGER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) **ORDER**<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. )<br>)<br>) | |

**THIS MATTER** comes before the Court on the Parties' Cross Motions for Summary Judgment. (DEs 13, 16). Having fully considered the written arguments, administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is supported by substantial evidence and affirms the decision. Accordingly, the Court grants Defendant's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff Nichole Belanger ("Belanger") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of her social security claim. Belanger filed her application for disability insurance benefits on February 4, 2019, with an alleged onset date of May 5, 2019. (Tr.[1] 12).

In denying Belanger's social security claim, the ALJ conducted a five-step sequential evaluation. *Id.* at 12–23. At step one, the ALJ found that Belanger had not engaged in substantial gainful activity since the alleged onset date. *Id*. at 14. At step two, the ALJ found that Belanger

---

[1] Citations to "Tr." throughout the order refer to the ALJ's hearing decision in the administrative record located at DE 10-1.

had the following combination of severe impairments: bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), hernia, and migraine headaches. *Id*. The ALJ also found that Belanger had the following non-severe impairments: Lyme's disease and history of breast cancer. *Id*. at 15. At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. *Id*. at 15–17. Before moving to step four, the ALJ found that Belanger had the residual functional capacity ("RFC") to perform light work as explained below:

> [T]he claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) except she is only able to stand for four hours out of an eight-hour workday. The claimant needs to avoid concentrated exposure to hazards such as unprotected heights and moving mechanical parts. She can only occasionally climb stairs and ramps but never climb ladders or scaffolds. The claimant can only occasionally balance, stoop, knell, crouch, and crawl. She is limited to understanding, remembering, or carrying out simple instructions. The claimant can only make simple, work-related decisions. She can only tolerate occasional change in work location. The claimant is unable to work at a strict production rate.

*Id*. at 17. At step four, the ALJ found that Belanger could not perform any past relevant work but found at step five that Belanger could perform jobs that exist in significant numbers in the national economy, including as a mailroom clerk, cashier, and office helper. *Id*. at 22–23.

After exhausting her administrative remedies, Belanger brought the instant action for review of Defendant's decision denying her application for disability benefits. (DE 1).

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District

2

Case 5:21-cv-00019-RJC   Document 20   Filed 08/08/22   Page 2 of 12

Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III.     DISCUSSION OF CLAIM

Belanger raises three challenges: (1) the Agency's structure is unconstitutional, (2) the ALJ misevaluated the medical opinion of treating physician, Dr. Thommen, and (3) the ALJ failed to resolve apparent conflicts between the vocational expert's ("VE") testimony and the Dictionary of

3

Occupational Titles ("DOT"). None of the challenges warrant remand or reversal.

### A. Agency Structure

Belanger argues the Social Security Act unconstitutionally restricts the President's removal of the Commissioner, and due to the unconstitutional structure of the Social Security Administration, the authority vested in the ALJ by the Commissioner was unconstitutional. Thus, Belanger asks the Court to remand her case for a new hearing. Defendant agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. (DE 17 at 3–4). But Defendant contends a new hearing is not necessary because Belanger was not harmed by the unconstitutional statutory removal restriction. *See Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021).

The Supreme Court held in *Seila Law v. Consumer Financial Protection Bureau* that Congress cannot limit the President's power to remove the Director of the Consumer Financial Protection Bureau to instances of "inefficiency, neglect, or malfeasance." *Seila Law v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020). It reached a similar conclusion the next term in *Collins v. Yellen*, concluding the Federal Housing Finance Agency's ("FHFA") structure unconstitutionally violated the separation of powers because the statute restricted the President's removal authority of the single Director "for cause." *Collins*, 141 S. Ct. at 1787. Here, Belanger argues, like in *Seila Law* and *Collins*, the Social Security Act violates the separation of powers because the statute restricts the President's ability to remove the Commissioner. 42 U.S.C. § 902(a)(3). ("An individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office."). On July 8, 2021, the Justice Department's Office of Legal Counsel issued an opinion that the removal restriction for the Commissioner violates the separation of powers in light of *Seila* and *Collins* and

concluded the President may remove the Commissioner at will, notwithstanding the statutory removal limitation. *The Constitutionality of the Commissioner of Social Security's Tenure Protection*, 45 Op. O.L.C. ––––, slip op. (July 8, 2021).

However, in *Collins*, after the Supreme Court concluded the FHFA's structure was unconstitutional, it explained that because the Director who headed the FHFA was properly appointed there was "no reason to regard any of the actions taken by the FHFA . . . as void" and explained that plaintiffs are not entitled to retrospective relief without showing the unconstitutional provision "inflict[ed] compensable harm." *Collins*, 141 S. Ct. at 1787–89. In other words, "the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office" when he is properly appointed simply because of the unconstitutional restrictive removal provision; rather, for retroactive relief plaintiffs must show they were harmed by the unconstitutional provision. *Id.* at 1788 n.23. The Supreme Court provided examples of when the statutory removal restriction may cause harm even with a properly appointed director. For example, if "the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal" or the "President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way." *Id.* at 1788. The case was remanded for the lower courts to decide in the first instance whether the unconstitutional removal restriction caused harm to the plaintiffs. *Id.* at 1789. Applying these principles to the social security context, "a plaintiff must demonstrate some nexus between the removal protection and the injury [he] alleges in order to present a cognizable challenge to the constitutionality of the Social Security Commissioner's for-cause removal protection." *Satterthwaite v. Kijakazi*, No. 3:20-cv-724-MOC, 2022 WL 468946, at *3 (W.D.N.C.

Feb. 15, 2022).

Here, Belanger convincingly argues the Social Security Act's restrictive removal provision is unconstitutional. However, the existence of the unconstitutional removal provision alone does not entitle Belanger to a new hearing. Belanger fails to show how she was harmed by the restrictive removal provision. Instead, her conclusory argument is that the "unconstitutional nature of Saul's appointment directly impacted disability determinations." In other words, the constitutional defect runs from the Commissioner to each ALJ because the Commissioner delegates authority to the ALJs. And that defect resulted in compensable harm. However, Belanger fails to cite any legal authority or otherwise show the Court how she was particularly harmed aside from making conclusory statements that "[t]here was a strong possibility" she was harmed. (DE 14 at 14). This is insufficient to demonstrate direct harm.

Belanger also relies on *Lucia v. SEC* to support her argument that she is entitled to a new hearing; however, *Lucia* is inapposite. 138 S. Ct. 2044 (2018). In *Lucia*, the plaintiff challenged administrative proceedings before the Securities and Exchange Commission arguing that the ALJ was unconstitutionally appointed. *Id*. at 2053–55. The Supreme Court concluded the ALJ was improperly appointed and remanded for a new hearing before a properly appointed ALJ. *Id.* However, this case is more similar to *Collins*. The thrust of Belanger's argument is not that the ALJ was improperly appointed, but rather that the Social Security Act's removal restriction is unconstitutional. Because Belanger has not demonstrated a nexus between the statutory removal protection and her alleged injury, she is not entitled to a new hearing.[2]

---

[2] Defendant also argues Belanger is not entitled to a new hearing for various other reasons including harmless error, the de facto officer doctrine, the rule of necessity, and prudential considerations, which the Court need not consider in light of finding Belanger failed to demonstrate any harm or a nexus between the removal restriction and her alleged injury.

### B. Opinion of Treating Physician, Dr. Thommen

Belanger argues that the ALJ improperly assessed the opinion of treating psychiatrist, Dr. Rachel Thommen. Specifically, Belanger argues that the ALJ discounted Dr. Thommen's opinion without explaining why the opinion was not persuasive or why it was inconsistent with other record evidence; thus, arguing that the ALJ failed to build a "logical bridge from the evidence to his conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

After March 27, 2017, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, ALJs focus on the persuasiveness of the medical opinions while considering five regulatory factors. Of the five factors, an ALJ need only explain how he considered the factors of supportability and consistency. *Id.* at § 404.1520c(b)(2). ALJs are not required to consider evidence from nonmedical sources using these requirements. *Id.* at § 404.1520c(d).

Here, when evaluating Belanger, Dr. Thommen marked[3] extreme limitations on a form document in areas such as understanding, remembering, and carrying simple and complex instructions; making simple and complex decisions; interacting with others; and responding to usual work situations and changes in routine work setting. (Tr. 21). The ALJ noted that Dr. Thommen supported her opinions by referencing Belanger's anxiety and depression. *Id.* The ALJ then determined the persuasiveness of Dr. Thommen's opinion in accord with the new rules by evaluating the supportability and consistency of the opinion, ultimately finding Dr. Thommen's

---

[3] Courts have held that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Shelton v. Colvin*, Civ. No. 7:13-cv-00470, 2015 WL 1276903, at *3 (W.D. Va. Mar. 20, 2015) (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3rd Cir. 1993)); *Michaels v. Colvin*, Civ. No. 3:15-CV-388-RJC-DSC, 2016 WL 8710975, at *5 (W.D.N.C. Mar. 25, 2016), report and recommendation adopted, 2016 WL 5478014 (W.D.N.C. Sept. 26, 2016), aff'd sub nom., *Michaels v. Berryhill*, 697 Fed. Appx. 223 (4th Cir. 2017).

opinion unpersuasive.

> However, she opined the claimant could manage benefits in her own best interest. Although the doctor provided some support for [her] opinion, it does not appear consistent with the evidence as a whole. There is no doubt the evidence showed the claimant had depressed, anxious, and/or stressed moods with anxious or blunted affect and poor attention and concentration. Nevertheless, she regularly appeared alert and fully oriented with intact memory, fund of knowledge, insight, and judgment. Those frequent normal findings contradict the severity opined by Dr. Thommen. Therefore, I find the opinion from Dr. Thommen is not persuasive.

*Id.* at 21 (internal citations omitted). The ALJ followed the statutory requirements, analyzing the supportability and consistency of Dr. Thommen's opinion in light of the record evidence as a whole. Because Dr. Thommen's opinion was self-contradictory and conflicted with specific record evidence, the ALJ found it unpersuasive. Accordingly, Belanger's assertion that the ALJ misevaluated Dr. Thommen's opinion fails to show how the ALJ ran afoul of applicable law and resulted in harmful error to Belanger. *See Lemmonds v. Berryhill*, No 3:16-CV-120-RLV-DCK, 2017 WL 9516603, at *5 (W.D.N.C. Feb. 21, 2017) ("Plaintiff clearly disagrees with the ALJ's decision, but fails to offer any persuasive argument or authority that the ALJ did not follow the proper legal standards and/or did not rely on substantial evidence in reaching his determination"). As the ALJ followed the new rules, explained his evaluation on Dr. Thommen's opinion, and built a "logical bridge from the evidence to his conclusion," the ALJ's opinion evaluation is supported by substantial evidence. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

### C. Alleged Conflicts between DOT and VE Testimony

Belanger argues that the ALJ failed to address two conflicts between the DOT and the testimony of the VE. The first alleged conflict is the RFC limitation of "simple instructions." The second alleged conflict is the RFC limitation of standing or walking no longer than four hours a day.

i. <u>Simple Instructions</u>

8

Case 5:21-cv-00019-RJC   Document 20   Filed 08/08/22   Page 8 of 12

Belanger believes this limitation conflicts with two of the three jobs (mailroom clerk and cashier) the VE identified, which both require a reasoning level of three. Of note, Belanger does not allege that this limitation conflicts with the office helper job identified by the VE, which requires a reasoning level of two. Instead, Belanger argues that remand is appropriate when a conflict exists with two out of three jobs identified by the VE. Defendant argues that, based on Fourth Circuit precedent, there is no conflict between "simple instructions" and a reasoning level of two and that any conflict with the reasoning level three jobs is harmless error as the ALJ noted that there were 67,000 office helper jobs (reasoning level 2) in the national economy.

The Fourth Circuit has held that remand is required when an ALJ fails to address a conflict between the DOT and the testimony of the VE. *Thomas v. Berryhill*, 916 F.3d 307, 313 (4th Cir. 2019). In *Thomas*, the Fourth Circuit found a conflict between a limitation to "short, simple instructions" and a reasoning level of two (which requires carrying out detailed but uninvolved instructions). *Id.* The Fourth Circuit then distinguished its ruling in *Thomas* in a precedential decision, *Lawrence v. Saul*, 941 F.3d 140 (4th Cir. 2019). In *Lawrence*, the Fourth Circuit held that there is no conflict between a reasoning level of two and the limitation to "simple, routine, repetitive tasks." *Id.* at 143–44. The Court explained the difference between the limitation "simple, routine, repetitive tasks" (reasoning level two) and the limitation in *Thomas* to "short, simple instructions" (reasoning level one).

> [T]he key difference is that Thomas was limited to "short" instructions. "Short" is inconsistent with "detailed" because detail and length are highly correlated. Generally, the longer the instructions, the more detail they can include. . . . There is no comparable inconsistency between [simple, routine, repetitive tasks] and Level 2 [reasoning].

*Id.*

Here, Belanger had an RFC that limited her to "simple instructions." This is akin to the

limitation in *Lawrence* as the ALJ did not limit Belanger to any limitations (i.e., short instructions) that conflict with detailed instructions present in reasoning level two jobs. Thus, for the same reasons that the Fourth Circuit found there was no conflict in *Lawrence*, there is no conflict with reasoning level two jobs. While the VE listed two reasoning level three jobs which likely conflict with the limitation to "simple instructions," there is no conflict with the office helper job which is a reasoning level two job. And the ALJ found that there were 67,000 office helper jobs in the national economy. This constitutes a significant number of jobs that Belanger could perform. *Parsons v. Shalala*, 33 F.3d 52 (4th Cir. 1994) (noting that as little as 1350 jobs can be significant and holding that a significant number of jobs can exist even if some jobs identified by the VE are not counted); *McCall v. Saul*, 844 F. App'x 680, 681 (4th Cir. 2021) (81,000 jobs constitutes significant numbers). Indeed, this Court previously found 68,090 garment checker jobs was significant, even if the other two jobs listed by the VE were removed for conflicts. *Nance v. Berryhill*, No. 5:16-CV-00230-RJC, 2018 WL 1176064, at *5 (W.D.N.C. Mar. 6, 2018). Thus, any unresolved conflict is harmless. As the Fourth Circuit articulated, a showing of prejudice is required to show an error is not harmless. *Camp v. Massanari*, 22 Fed. App'x 311 (4th Cir. 2001). And Belanger has failed to show any prejudice that would lead to a different result in this case. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *Smith v. Colvin*, No. 1:12-CV-00285-MOC, 2014 WL 1203282, at *7 (W.D.N.C. Mar. 24, 2014) (explaining that error was harmless where "remand would not lead to a different result").

    ii.  <u>Standing or Walking for no More than Four Hours</u>

Belanger argues that standing or walking for no more than four hours a day conflicts with the RFC limitation to "light work," and that the VE did not account for this conflict. Federal Regulations define "light work" as including "a good deal of walking and standing." 20 C.F.R. §

404.1567(b). One step below light work is "sedentary work," which includes "walking and standing . . . occasionally." *Id*. at § 404.1567(a). The Social Security Administration further clarified the amount of walking and standing required for light work and sedentary work. For sedentary work, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday." SSR 83-10. For light work, standing or walking is required "from one-third to two-thirds of the time." *Id.* Thus, light work requires standing or walking for approximately two to six hours, with "the full range of light work require[ing] standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Id.*

First, there is no alleged six-hour limitation in the jobs identified by the VE and other courts, including the Fourth Circuit, have found no conflict between light work and a limitation against standing for more than four hours for the office helper position. *See, e.g.*, *Miller v. Chater*, 91 F.3d 132 (4th Cir. 1996) (affirming ALJ's decision that plaintiff could perform light work where the RFC limited plaintiff to standing no more than four hours); *Jones v. Colvin*, No. ED CV 14-0530 JCG, 2015 WL 3952309, at *1–2 (C.D. Cal. June 29, 2015); *Devore v. Comm'r of Soc. Sec.*, No. 1:14-CV-00663-SAB, 2015 WL 3756328, at *4 (E.D. Cal. June 16, 2015) ("[T]he limitation of four hours standing/walking is not necessarily inconsistent with the "light work" jobs identified by the DOT."); *Robin G. v. Kijakazi*, No. 2:20-CV-00362-JAW, 2022 WL 110245, at *4 (D. Me. Jan. 12, 2022), *report and recommendation adopted sub nom.*, 2022 WL 504077 (D. Me. Feb. 18, 2022).

Second, there is no evidence the VE failed to account for the four-hour limitation. At the hearing, the ALJ specifically asked the VE whether jobs exist in significant numbers in the national economy for a hypothetical person with Belanger's RFC, including a person "capable of performing at the light exertional level [who] is only able to stand and walk for four hours out of

11

an eight-hour workday." (Tr. 66–67). The VE understood the standing requirement as she reduced the total number of certain jobs based on whether sitting or having a stool to sit on was considered a work accommodation. *Id.* at 67. In the end, the VE testified that such jobs existed, including at least 67,000 office helper jobs. *Id.* This aligns with other cases that found there was no conflict between light work and a limitation against standing for more than four hours in an eight-hour workday.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (DE 13), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (DE 16), is **GRANTED**; and

3. Defendant's decision to deny Plaintiff Social Security benefits is **AFFIRMED**.

The Clerk is directed to close this case.

**SO ORDERED.**

Signed: August 8, 2022

Robert J. Conrad, Jr.
United States District Judge